UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED
OCT 19 2012
AT 8:30
WILLIAM T. WALSH M
CLERK

EEOC Complaint # 524-2012-00832

Atiya Wahab,
Plaintiff,
vs.

Civil Action No. _____

State of New Jersey Department of Environmental Protection,
Defendant

COMPLAINT

PARTIES

Ms. Atiya Wahab
9 Saylors Pond Road
Wrightstown, NJ 08562

New Jersey Department of Environmental Protection
401 East State Street, 7th Floor
Trenton, NJ 08625

JURISDICTION

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. Section 2000e et seq. and U.S.C. 1331. Equitable and other relief are also sought under 42 U.S.C. Section 2000e -5 (g). This action is also brought pursuant to Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621,et seq., for employment discrimination based upon age. Jurisdiction is specifically conferred on this Court by 28 U.S.C. §§ 1331, 1337, and/or 1343. My year of birth is 1952. This action is also brought pursuant to Americans with Disabilities Act of 1990, as amended. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §§ 12101, et seq., and/or Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq.

This action is brought subsequent to the Equal Employment Opportunity Commision (EEOC) complaint 524-2012-00832. The resulting Notice of Right to Sue letter is attached (Attachment A).

1

## CAUSE OF ACTION

Plaintiff's Bureau Chief, Steve Maybury, and Section Chief, Gwen Zervas, at the New Jersey Department of Environmental Protection (NJDEP), created a hostile working environment and acted in a hostile and discriminatory manner toward Plaintiff from approximately January/February 2011 through January 2012. In addition, plaintiff received retaliatory threat of disciplinary action from Ms. Deborah Figueroa, Office of Labor Relations Office, NJDEP in a meeting on January 18, 2012 in presence of Plaintiff's Bureau Chief, Steve Maybury, and Section Chief, Gwen Zervas following her EEO of NJDEP complaint dated December 12, 2011 regarding discriminatory treatment and harassment. The same retaliatory threat against Plaintiff was validated on email from Ms. Pam Lyons, Director EEO of NJDEP (January 20, 2012 email copy attached – Attachment B).

1. On or about October 1989, Plaintiff, a female employee of Bangladesh origin, transferred from the State of New Jersey Department of Health (NJDOH) to the NJDEP. Plaintiff began working for Mr. Maybury, Bureau Chief of the Bureau of Case Management (BCM) in Site Remediation Program (SRP) of NJDEP on or about October 2009. Plaintiff was consistently a productive employee with good performance reviews and has twenty two years of experience in Site Remediation.

2. On June 2, 2009, Plaintiff and Ms. Goodwin received an award for NJDEP's Opportunities for Innovation Program for suggesting a better way to track or identify specific environmental concerns associated with a site. This suggestion was to aid both inside customers (NJDEP employees) and outside customers (the regulated community). The award was given by Acting Commissioner Mark Mauriello.

3. On or about February 2011 Bureau Chief Steve Maybury went to Plaintiff's then supervisor Section Chief Roman Luzecky's open cube in anger and told him (for

2

everyone else to listen in) that he does not want to speak to Plaintiff. Roman Luzecky came to Plaintiff's cube to warn her about Mr. Maybury's angry outburst. Plaintiff has literally walked around the perimeters of the office floor to avoid Mr. Maybury's anger for a long time after this.

4. In summer 2011, Plaintiff had completed the necessary surveys for a lateral transfer and had twice selected "Inspection and Review" as her first choice in two different surveys for lateral transfer. Transfers were available for employees as one of their first three choices throughout Site Remediation Program as a result of extensive reorganization.

5. Section Chief Roman Luzecky retired on or about August 26, 2011 and Section Chief Gwen Zervas became Plaintiff's supervisor. On or about September 7, 2011, within about two weeks of becoming plaintiff's supervisor Section Chief Gwen Zervas verbally assaulted her in the hallway near the coffee area, including a statement, "I don't want to work with you." This happened when Plaintiff approached Ms. Zervas with a technical point that Bureau Chief Maybury raised regarding a site (Crown Vantage Site). The technical issue or point was initiated by Ms. Zervas herself for Plaintiff to pursue with the USEPA, which Plaintiff did by email and copied Mr. Maybury and Ms. Zervas. Next morning, Plaintiff approached Ms. Zervas in the hallway in a friendly manner and proceeded to tell Ms. Zervas about Mr. Maybury's point or opinion regarding the technical issue. Plaintiff was immediately subjected to Ms. Zervas' angry outburst in the hallway for everyone to see and hear. Plaintiff tried to appease her – it did not work. Plaintiff has not seen any other staff member subjected to angry outburst by Ms. Zervas or hear her remark of "I don't want to work with you" to any other coworker.

6. On or about the day following the hallway incident, Ms. Zervas also came to Plaintiff's cube in anger to harass Plaintiff for emailing her technical issue to USEPA and not phone-calling the USEPA about the technical issue. Plaintiff responded that she was more comfortable raising the issue by email. Ms. Zervas was not appeased and made a derogatory statement about plaintiff's ability of calling the USEPA by phone. Plaintiff

was a senior staff member with a supervisory title herself (Supervisory Technical Specialist or Environmental Specialist 4) with the authority for independent initiative and communication in her performance agreement. Plaintiff emailed the USEPA with Ms. Zervas' issue with the belief that Ms. Zervas can verify that her issue is communicated properly and exactly as she had intended. During this exchange, Ms. Zervas stated that Plaintiff is not to copy the Bureau Chief Maybury in her emails.

7. As stated above, the hallway incident in early September 2011 with Ms. Gwen Zervas was followed by her order that Plaintiff is prohibited from copying the Bureau Chief in her emails; this prohibition was solely for Plaintiff and not for any other staff member in the bureau, which constitutes discriminatory treatment. A copy of Plaintiff's email communication with Ms. Zervas dated September 21, 2011 is attached regarding the agreement to this discriminatory prohibition (Attachment C). This distressed Plaintiff because she believed that she had to copy Mr. Maybury in her email to the EPA Project Manager about a legal point that Ms. Zervas herself raised so that everyone is on the same page about the progress of the cleanup of the site. However, since the early September incident Plaintiff had to work under the order that she was not to copy Bureau Chief Maybury in her emails through the remainder of her employment at BCM. The Plaintiff believes this prohibition to copy her Bureau Chief constitutes discriminatory and disparate treatment because no other similarly situated or junior coworker was working under this directive and Plaintiff has not seen any written directive to this effect from Mr. Maybury to staff or from Ms. Zervas to other staff. All others in BCM even junior staff members were emailing and/or copying Mr. Maybury without any restriction (please see attached email dated 1/12/12 from Ms. Lynn Vogel, a Caucasian female coworker, with a junior title, to Mr. Maybury (Attachment D). Plaintiff believes that this is discriminatory restriction of access. This also was a burden for Plaintiff's performance because she was barred from expediting technical resolutions by access to expeditious final resolution of communication with senior management even though Plaintiff was a senior staff member with a senior level technical title.

4

8. Plaintiff applied timely for lateral transfers available as a result of SRP reorganization twice in two different electronic surveys in summer of 2011 prior to the official December 1, 2011 SRP transfer list. On or about November 1, 2011 Plaintiff was worried about her transfer and approached coworker Matt Turner (Technical Environmental Specialist or Environmental Specialist 4, Male, and Caucasian) who she heard just got transferred. Mr. Matt Turner told Plaintiff that he was told by Ms. Zervas that he was to be transferred to "Inspection and Review" as soon as he wraps up his work in BCM. Mr. Turner also told Plaintiff that he had to just indicate "Inspection and Review" Bureau as his first choice and that was all he did for his transfer to "Inspection and Review" Bureau and instructed Plaintiff that is all she had to do, which is exactly the same as Plaintiff already did. Mr. Turner was correct because these transfers were not based on any interview or test; these transfers, it appeared, until the time of her later December complaint, were based on choices in the survey by the BCM employees for lateral positions.

9. On November 3, 2011, Plaintiff petitioned to Assistant Commissioner David Sweeney of Site Remediation, NJDEP about being treated disparately in Bureau of Case Management (BCM) and about BCM management's blocking Plaintiff's lateral transfer while letting others in BCM transfer to the Bureaus they have selected as first preference just as plaintiff did. However, no word of a transfer came.

10. On December 1, 2011, an email list came out in SRP (Attachment E). The list indicated numerous coworkers were transferred to various bureaus in SRP (SRP was going through a reorganization.) Until Plaintiff saw the December 1, 2011 list of the persons who transferred to all different Bureaus in Site Remediation (attached with the letters to EEOC and EEO NJDEP), Plaintiff had hoped that she might also be able to transfer out; because as others who chose "Inspection and Review as their first choice she had also selected "Inspection and Review" as her first choice and the hiring manager also expressed verbal interest in having her in her group. The official December 1, 2011 SRP transfer list did not contain Plaintiff's name. This made Plaintiff aware that her transfer

5

was blocked despite her survey choices and Plaintiff's November 3, 2011 petition to Assistant Commissioner David Sweeney.

11. On December 12, 2012, Plaintiff petitioned to Ms. Pam Lyons, Director EEO NJDEP regarding her disparate and discriminatory treatment in BCM and regarding her blocked transfer obvious from the official December 1, 2011 transfer list throughout SRP. By the time of Plaintiff's December 12, 2011 complaint to EEO NJDEP, BCM and SRP management blocked her lateral transfer while all others in BCM who wished to transfer laterally were allowed transfer and their names were listed in the official December 1, 2011 SRP transfer list. Plaintiff desperately wished to transfer because of her discriminatory and disparate working condition and because BCM supervisors openly expressed their disdain to work with her and were treating her with disparate hostility. The least Plaintiff expected from her BCM supervisors is that they would allow her to laterally transfer to the Office of Licensed Site Remediation Professionals Program (LSRP) Form Inspection and Review a.k.a. Bureau of "Inspection and Review". This was her first choice in the lateral Surveys (all coworkers who had transferred to "the Bureau of Inspection and Review" from BCM had it as their first choice in the survey) and there was a need for someone with her qualifications in "Inspection and Review ". In addition, the hiring manager had expressed verbal interest to have Plaintiff in her group. But unlike other fellow coworkers in BCM Plaintiff was not allowed to transfer.

12. Plaintiff was well qualified for a lateral position in "Inspection and Review" because of her wide range of experience for about 20 years in Site Remediation Program (SRP) and "Inspection and Review" was her first selection in the necessary surveys in SRP and the hiring manager of "Inspection and Review" wanted to have Plaintiff in her group. Plaintiff has two separate Masters Degrees in Environmental Science (NJIT) and in Chemistry (Stevens Institute of Technology) in addition to her decades of technical experience in various Bureaus within SRP. No one in the above list has two pertinent Masters Degrees or as wide experience as the Plaintiff. Plaintiff never had any problem in her performance evaluations. Plaintiff believes that she deserved to be treated equally as other coworkers.

13. All twenty four SRP employees in the official December 1, 2011 transfer list who were transferred to "Inspection and Review" are Caucasian with the exception of one Hispanic male. Plaintiff believes that this is discrimination based on gender, national origin, ethnicity, race, and creed.

The list of BCM coworkers, all Caucasian males, who were allowed to transfer out laterally at the time of her complaint of December 12, 2012 from her group, BCM, is as follows:
- Mark Walters
- Bob Simpson
- Glen Savary
- Raymond Pinkstone
- Frank Faranca
- John Doyon
- Atwood Davis
- Matt Turner
- Joseph Karpa

The BCM/SRP management did not block any of the above lateral transfers but they did block Plaintiff's lateral transfer when there were at least twenty-four available positions in "Inspection and Review". Mr. Matt Turner and other coworkers from BCM who transferred to "Inspection and Review" or to any other Bureaus are at the same title level as Plaintiff and Mr. Atwood Davis has a junior title (Environmental Specialist 2) with respect to Plaintiff. Please note that the coworkers who were transferred out of BCM on the above list are all Caucasian males while Plaintiff's ethnicity is Bengali, her country of origin is Bangladesh, her race is South Asian, she was born in a Muslim family – it is obvious from her last name - and her skin color is brown.

14. Plaintiff has Seasonal Affective Disorder (SAD) and has been patiently waiting for a window cube but available window cubes were repeatedly denied to her despite her seniority by Bureau Chief Steve Maybury of BCM. Several years before the Plaintiff had submitted a note to the NJDEP Human Resources from Dr. Jass, her doctor, to allow her to have maximum possible light at work (copy was attached in December 12, 2011 complaint to EEO NJDEP and is attached). During the same period Mr. Maybury allowed Mr. Bhanu Prasad Rao (Indian male) with a junior title (Environmental Specialist 2) and considerably less seniority to have the largest available window cube. Mr. Rao's move was facilitated by Mr. Maybury and Ms. Sarah Barret during the period when officially no moves were happening because moving his telephone required approval of both. Plaintiff had requested former coworkers Mr. Doyen's and Mr. Kuene's to-be-vacant window location cubes sequentially during the span of several months, in both cases Mr. Maybury initially verbally approved the cubes for her, but later her move was denied. Mr. Maybury allowed same ranking or junior coworkers to have cubes next to windows during the same time frame. Plaintiff later learned from an open staff meeting with Mr. Maybury that window cubes are assigned by seniority in service by SRP/NJDEP and Plaintiff has more than twenty five years of seniority in NJ State service, which by itself qualified her to an assignment of a window cube. However Plaintiff was repeatedly denied a window cube whenever she requested one despite her seniority in service and despite her disability of having SAD. SRP human resource officer, Ms. Sarah Barrett, also harshly denied (her email attached – Attachment F) a window cube to Plaintiff; the cube that was already vacated by a then recently retired coworker Mr. Brian Kuene. On December 1, 2011, Mr. Maybury and Ms. Barret gave this cube to a younger coworker (a Caucasian female) who joined BCM on or about that date when other empty cubes immediately next to this cube were available. The same window cube 5W825 was initially verbally approved for Plaintiff by Mr. Maybury in late summer 2011. But Mr. Maybury and Ms. Barret both denied the window cube to Plaintiff. Plaintiff had more total seniority in service in NJDEP and State of NJ than the employees who were assigned the window cubes and a documented medical need for a window cube. Ms. Barrett and Human Resources took the position that a reasonable accommodation has been provided because one overhead light and a desk light has been

provided in a generally low light area of Plaintiff's interior cube. However, these lights do not totally match the full spectral continuum and intensity of daylight coming from a window. In addition, the lights provided do not match the level of maximum intensity of daylight provided by a window cube – to her knowledge no measurements have been made. Therefore these cubes were assigned arbitrarily and discriminatorily despite Plaintiff's seniority in title or total years of service and SAD condition. This was discriminatory treatment under national origin and gender because by that time Mr. Maybury announced in a staff meeting that cube assignments are based on seniority (a hand written cube assignment plan for BCM's latest move is attached that is based on total seniority). This denial of a window cube with maximum possible light was also discriminatory under the Americans with Disabilities Act (ADA) and discriminatory under fringe benefits of Title VII.

15. On December 12, 2012, Plaintiff complained to Ms. Pam Lyons, Director EEO, NJDEP in a letter (attached) stating her suffering in BCM and denial of her transfer as obvious in the official December 1, 2011 transfer list. Ms. Lyons and one of her staff met with Plaintiff on December 13, 2011. They asked Plaintiff a few leading questions and made her sign a statement at this meeting but refused to give her a copy when requested. Plaintiff revoked her statement on January 5, 2011 (a copy attached). The EEO NJDEP office sent a letter to Plaintiff upholding plaintiff's non-transfer. The EEO refused to address other discriminatory treatments in BCM towards Plaintiff.

16. On January 18, 2012 at around 10:30 Plaintiff had a meeting with Ms. Deborah Figueroa, Officer Labor Relations and Section Chief Zervas and Bureau Chief Maybury. Ms. Figueroa's tone was condescending, she kept asking Plaintiff after her each statement, "Do you understand me." After listening to the same statement multiple times, Plaintiff clarified that she understands English. Toward the end of the meeting Ms. Figueroa stated, "I am not going to lie to you – I am management." Then Ms. Figueroa proceeded to say, "The Management has the right to discipline you" while Section Chief Zervas and Bureau Chief Maybury supported her threat with their silence. Prior to this meeting Plaintiff had no reason for any disciplinary issue against her. Plaintiff asked her twice,

"Are you threatening me." She did not deny it – or retract her threat of disciplinary action. Mr. Maybury and Ms. Zervas, sitting at the same table, did not contradict Ms. Figueroa when she made the retaliatory disciplinary threat against Plaintiff. Plaintiff was deeply troubled by the threat. Ms. Figueroa, Section Chief Zervas and Bureau Chief Maybury stayed behind the closed door when they asked Plaintiff to leave.

17. On January 19, 2012 at around 1:34 PM, Plaintiff emailed Ms. Pam Lyons of Office of Equal Opportunity and Ms. Debbie Ewalt, Assistant Commissioner, Human Resources, NJDEP (the email is attached- Attachment B). To Plaintiff's grave concern, Ms. Lyons supported the option of Management regarding a disciplinary action (Ms. Lyon's email attached-Attachment B) against Plaintiff.

18. Prior to January 18, 2012, Plaintiff was not warned verbally or in writing according to NJDEP's process of progressive discipline by either Section Chief Zervas and Bureau Chief Maybury regarding any disciplinary action against her. NJDEP has an internal policy for incremental steps for discipline stating a clear cause. Therefore, Plaintiff believes that the threat of disciplinary action against her is a violation of NJDEP's process of progressive discipline and is a result of her complaint of December 12, 2012 to EEO NJDEP. As such, it constitutes retaliation under the above jurisdictions.

19. Plaintiff was feeling physically ill from all the stresses of the workplace and the most recent retaliatory threat against her and saw her physician, Dr. Jass, on January 20, 2012. As a result of this threat of disciplinary action after suffering all above mentioned disparate treatments and hostility, Plaintiff suffered from an acute health crisis. Plaintiff's physician was concerned about her recorded shooting high blood pressure and other stress related ailments and instructed her to take to sick leave for three weeks (Attachment G).

20. On or about February 24, 2012, Plaintiff met with Director Ken Kloo regarding other job possibilities within SRP. After the meeting Director Kloo indicated that there was a

position available in Office of Data Quality (ODQ) in SRP. On April 6, 2012 Plaintiff moved to ODQ and she has been working in this bureau since that date.

21. In June 2012, Plaintiff filed an Equal Employment Opportunity Commission (EEOC) complaint regarding her discriminatory treatment at BCM, NJDEP and retaliatory threat from Ms. Figueroa and Ms. Lyon's support of the retaliatory threat.

22. On July 24, 2012, the EEOC responded to Plaintiff stating that they were unable to conclude that the information obtained establishes a violation of the statutes. This does not imply that the respondent (NJDEP) is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. However, this did not diminish Plaintiff's claim and she could file her case in Federal Court. (Please find attached the Notice of Right to Sue letter – Attachment A)

## DEMAND

WHEREFORE, Plaintiff prays that the Court grant such relief as may be appropriate including injunctive orders, damages and costs and jury trial.

*Atiya Wahab*
Atiya Wahab