NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATIYA WAHAB<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION,** *et al.*,<br><br>Defendants. | Civil Action No. 12-6613 (ZNQ) (DEA)<br><br>OPINION |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon three separate Motions for Summary Judgment filed pursuant to the Rule 56 of the Federal Rules of Civil Procedure. The first Motion for Summary Judgment ("First Motion for Summary Judgment") was filed by Defendants State of New Jersey ("the State"), State of New Jersey Department of Environmental Protection ("NJDEP"), Steven Maybury ("Maybury"), Gwen Zervas ("Zervas"), and Pam Lyons ("Lyons") (collectively, "State Defendants"). The second Motion for Summary Judgment ("Second Motion for Summary Judgment") was filed by Defendant Deborah Figueroa ("Figueroa"). The third Motion for Summary Judgment ("Third Motion for Summary Judgment") was filed by Plaintiff Atiya Wahab ("Plaintiff").

  State Defendants filed a Brief in Support of their Motion ("State's Moving Br.", ECF No. 224) and a Statement of Undisputed Material Facts ("State's SUMF", ECF No. 224). Plaintiff filed a Brief in Opposition to the State's Motion for Summary Judgment ("Pl.'s Opp'n to State's

1

Motion", ECF No. 238-1) and a Counter Statement in Response to State's Statement of Undisputed Material Facts ("Pl.'s Counter Statement to State's SUMF", ECF No. 238-2.) State Defendants filed a Reply Letter in Support of Summary Judgment ("State's Reply to Pl.'s Opp'n", ECF No. 241.)

Defendant Figueroa filed a Memorandum of Law in Support of her Motion ("Figueroa's Moving Br.", ECF No. 227) and a Statement of Undisputed Material Facts ("Figueroa's SUMF", ECF No. 227-1). Plaintiff filed a Counter Statement in Response to the Figueroa's Statement of Undisputed Material Facts. ("Pl.'s Opp'n to Figueroa's SUMF", ECF No. 240-1.) Defendant Figueroa filed a Letter Brief in Reply to Plaintiff's Opposition ("Figueroa's Reply to Pl.'s Opp'n", ECF No. 243) and a Response to Plaintiff's Counter Statement of Material Facts ("Figueroa's Reply to Pl.'s Opp'n", ECF No. 243-1).

Plaintiff filed a Brief in Support of her Motion ("Pl.'s Moving Br.", ECF No. 228-1) and a Statement of Undisputed Material Facts ("Pl.'s SUMF", ECF No. 228-2). State Defendants filed a Response and Counter Statement to Plaintiff's Statement of Undisputed Material Facts ("State's Counter Statement", ECF No. 230-1) and an Opposition to Plaintiff's Motion for Summary Judgment ("State's Opp'n Br.", ECF No. 230). Plaintiff filed a Reply to the State's Opposition Brief ("Pl.'s Reply to State's Opp'n", ECF No. 244.)

The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated herein, the Court will GRANT State Defendants' and Defendant Figueroa's Motions for Summary Judgment and DENY Plaintiff's Motion for Summary Judgment.

I.      BACKGROUND

    A.      The Parties

Plaintiff Atiya Wahab ("Plaintiff"), a Bengali woman, alleges that she was subject to acts of unlawful discrimination and retaliation while employed by Defendant State of New Jersey (the "State") and the New Jersey Department of Environmental Protection ("NJDEP"). At all times relevant to this case, Defendant Steven Maybury ("Maybury") was the Bureau Chief of the Bureau of Case Management ("BCM") in the Site Remediation Program ("SRP") of Defendant NJDEP. At all times relevant to this case, Defendant Gwen Zervas ("Zervas") was the Section Chief of the BCM in the SRP. At all times relevant to this case, Defendant Pam Lyons ("Lyons") was Director of NJDEP's Equal Employment Opportunity Office ("EEOO") and Defendant Deborah Figueroa ("Figueroa") worked in the NJDEP's Office of Labor Relations of the Human Resources Department.

    B.      Procedural History

On October 19, 2012, Plaintiff received a Right to Sue letter from the U.S. Equal Employment Opportunity Commission. (Pl.'s SUMF ¶ 12.) Plaintiff, *pro se*, filed her initial Complaint in this matter. (ECF No. 1.) On July 12, 2014, Plaintiff retained counsel. (Pl.'s SUMF ¶ 193.) An Amended Complaint was filed on August 6, 2013 (ECF Nos. 9, 11) and a Second Amended Complaint was filed on June 14, 2015. (ECF No. 47.) In the Second Amended Complaint, Plaintiff alleges claims for retaliation and discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Count 1), violation of Title VII of the Civil Rights Act of 1964 (Count 2), and violation of the New Jersey Civil Rights Act ("NJCRA") (Count 3). ("SAC", ECF No. 47.)

3

### C. Undisputed Facts

The Court has found the following facts to be relevant and undisputed.

In 2009, Plaintiff was transferred to the Bureau of Case Management ("BCM") from the Bureau of Operation Maintenance and Management, (Pl.'s SUMF ¶ 54)[1], after being offered the choice of where to move, and was supervised in the BCM by Roman Luzecky until his retirement. (State's SUMF ¶¶ 9–10.)

On or around 2011, Defendant NJDEP initiated a reorganization process, and employees were given surveys to gauge their interest in transferring to different sections of NJDEP. (State's SUMF ¶ 43.) Plaintiff completed two surveys about where she might want to transfer when the site was being reorganized. (*Id.* ¶ 47.) Plaintiff wanted to transfer to the Bureau of Inspection and Review (BIR), but she was not chosen to transfer there. (*Id.* ¶ 48.)

On or about August 26, 2011, Defendant Zervas became Section Chief at the BCM and managed Plaintiff by assigning and reviewing her work, monitoring her timekeeping, and assisting her with additional learning. (Pl.'s SUMF ¶ 70; State's SUMF ¶¶ 11, 19.) In September 2011, Defendant Zervas directed Plaintiff to call a colleague from the Environmental Protection Agency (EPA), but Plaintiff emailed the colleague instead and copied both Defendants Zervas and Maybury in the email, and did not make the inquiry directed by Defendant Zervas. (Pl.'s SUMF ¶ 78; State's SUMF ¶¶ 20–21.) On September 21, 2011, Defendant Zervas directed Plaintiff to not copy Defendant Maybury on Plaintiff's emails. (State's SUMF ¶ 22.)

---

[1] State Defendants deny that Plaintiff's transfer was retaliation for opposing sexual harassment of a co-worker, but rather a voluntary transfer; they do not deny that Plaintiff was transferred from the Bureau of Operation Maintenance and Management. (State's Counter Statement ¶ 54.)

4

Plaintiff later requested a window cubicle due to her Seasonal Affective Disorder (SAD).[2] (Pl.'s SUMF ¶ 164.) On October 3, 2011, Plaintiff wrote to Sarah Barrett, an Administrative Officer, discussing moving to a window cubicle, but Ms. Barrett said that Plaintiff could not move cubicles because all moves were put on hold pending the reorganization of the NJDEP. (State's SUMF ¶ 37.) Defendant NJDEP arranged for special lighting to be installed in Plaintiff's cubicle in response to Plaintiff's request for additional lighting. (State's SUMF ¶ 39.) Defendant NJDEP indicated to Plaintiff that her request for a window cubicle would "not be addressed under the guise of ADA, since the Department has provided [Plaintiff] with a suitable accommodation." (*Id.* ¶ 40.)

On November 3, 2011, Plaintiff sent a letter to Assistant Commissioner David Sweeney ("Sweeney"), alleging that BCM "blocked" her transfer to BIR. (Pl.'s SUMF ¶¶ 110–12; State's SUMF ¶ 44.)

On December 1, 2011, Plaintiff received an email containing the list of successful candidates for transfer to the BIR, which did not include her name. (Pl.'s SUMF ¶ 139.)[3]

On December 12, 3011, Plaintiff filed a complaint with Defendant Lyons, alleging that BCM "blocked" her transfer to BIR. (Pl.'s SUMF ¶ 152; State's SUMF ¶ 45.) This included a seven-page letter on the subject of "Requesting Relief from Discrimination and Hostile Treatment to assist Pam Lyons in her investigation of Atiya's complaint." (Pl.'s SUMF ¶ 161.) On December 20, 2011, Defendant Lyons wrote to Plaintiff that a *prima facie* case of discrimination could not be established because "[t]he reorganization of the Division and resulting employees is an ongoing

---

[2] State Defendants admit only that Plaintiff requested a window cubicle and that a doctor's note was submitted. (State's Counter Statement ¶ 164.)
[3] State Defendants deny the allegation as to whether or not the successful candidates were less qualified than Plaintiff, but do not deny that there was an email sent out with the list of successful candidates transferring to BIR. (State's Counter Statement ¶ 139.)

5

process which will not be completed until the 2nd quarter of 2012." (State's SUMF ¶ 56.)[4] Defendant Lyons also indicated that Plaintiff should come back after reorganization was complete if there were still issues, but Plaintiff did not come back. (*Id.*) On December 27, 2011, the Office of Labor Relations found that "there was no evidence to show that Ms. Wahab was working in a hostile working environment or being harassed by Ms. Zervas or Mr. Maybury," and that the parties could meet to resolve any differences. (*Id.* ¶¶ 57–58.)[5]

On January 5, 2012, Plaintiff wrote to Defendant Lyons, seeking to revoke the statement that she had signed on December 13, 2011, at the direction of Defendant Lyons.[6] (Pl.'s SUMF ¶ 158.) Plaintiff sought a copy of the statement, but Defendant Lyons did not give her a copy. (Pl.'s SUMF ¶ 159.)

On January 18, 2012, Plaintiff had a meeting with Defendants Figueroa, Maybury, and Zervas to discuss the conflict from the EPA incident.[7] (Figueroa's SUMF ¶ 1.) Defendant Figueroa was present as a representative of the Office of Labor Relations. (*Id.* ¶ 3.) After each of Plaintiff's statements, Defendant Figueroa asked Plaintiff, "Do you understand me?" (*See id.* ¶ 6.) Defendant Figueroa informed Plaintiff that she could be disciplined if she did not obey management direction. (State's SUMF ¶ 60.) Plaintiff then asked Defendant Figueroa twice, "Are you threatening me?" (*Id.* ¶ 61.) The meeting ended at this point, and Defendant Figueroa spoke

---

[4] Plaintiff does not deny that this statement was made, only the truth of the statement made. (Pl.'s Counter Statement to State's SUMF ¶ 56.)
[5] Plaintiff does not deny the content of the letter, but denies that the conclusion is impartial, accurate, or truthful. (Pl.'s Counter Statement to State's SUMF ¶ 57.)
[6] Plaintiff does not indicate what this statement is in her briefing and there is no exhibit of the signed statement. Her revocation of the statement is filed under Exhibit J in ECF No. 228-3. The statement seems to be related to her complaint that she sent Defendant Lyons on December 12, 2011.
[7] The parties dispute how to define the purpose of the meeting. Plaintiff admits that there was a meeting but denies that it was to resolve issues between the parties involved regarding the EPA incident. Based on the parties' submissions, the meeting appears to have been to discuss the incident regarding Defendant Zervas's directions to Plaintiff about not copying Defendant Maybury in emails. The Court does not find the definition of the dispute to be material.

with Defendants Maybury and Zervas outside the presence of Plaintiff in the meeting room. (*Id.*) Plaintiff was not disciplined over the EPA communication, not following the chain of command, or her behavior at the meeting with Defendants Figueroa, Maybury, and Zervas. (Figueroa's SUMF ¶ 9.)

On January 19, 2012, Plaintiff emailed Defendant Lyons and Debbie Ewalt, Assistant Commissioner of Human Resources, about the discrimination and retaliation that she faced in the BCM after her meeting with Defendants Figueroa, Maybury, and Zervas.[8] (Pl.'s SUMF ¶ 186.)

Plaintiff transferred to the Office of Data Quality on or around February 27, 2012.[9] (State's SUMF ¶ 68.)

### D.     Jurisdiction

The Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a).

## II.     <u>LEGAL STANDARD</u>

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for

---

[8] State Defendants admit this fact only as to Plaintiff sending an email. (State's Counter Statement ¶ 186.)
[9] Plaintiff denies this fact only as to citation to the record to support this assertion. (Pl.'s Counter Statement to State's SUMF at ¶ 68.) Plaintiff does not deny that the lateral transfer left her salary and benefits unchanged. (*Id.*)

7

summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50).

There is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. However, summary judgment is not appropriate "if reasonable minds could differ as to the import of the evidence." *See Anderson*, 477 U.S. at 250–51.

8

### III.  DISCUSSION

#### A.  Claims under New Jersey Law Against Discrimination (NJLAD)

In a single count, Plaintiff asserts NJLAD claims against Defendants Maybury, Zervas, Lyons, and Figueroa in their individual capacities for both retaliation and discrimination. (SAC ¶¶ 91–94.)

Claims under the NJLAD "are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841–42 (3d Cir. 2016). Under the framework, (1) "the plaintiff first [must] establish a *prima facie* case of discrimination or retaliation"; (2) "the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions"; and (3) "the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Tourtellotte*, 636 F. App'x at 841 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04).

##### 1.  Retaliation

To state a *prima facie* case for retaliation under the NJLAD, a "plaintiff must show that (1) [he or] she was engaged in a protected activity known to defendant; (2) she was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Royster v. New Jersey State Police*, 439 N.J. Super. 554, 575 (App. Div. 2015) (internal quotation marks omitted).

###### a.  Adverse Employment Action

Given the nature of the events cited by Plaintiff, the Court begins by considering whether they qualify as one or more adverse employment actions.

To demonstrate an adverse employment action, "a plaintiff must show that a reasonable employee would have found that the employer's action was one that 'might . . . dissuade[ ] a reasonable worker from making . . . a charge of discrimination.'" *Roa v. Roa*, 985 A.2d 1225, 1236 (N.J. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 448 U.S. 53, 68 (2006)). Further, "retaliatory conduct must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee." *Marrero v. Camden Cnty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 473 (D.N.J. 2001) (quoting *Hurley v. Atlantic City Police Dep't,* Civ. No. 96-4928, 1998 WL 351781, at *12 (D.N.J. May 28, 1998)).

Here, Plaintiff cites to a series of incidents: (1) "being rejected for a job," i.e., being denied a transfer to BIR in 2011 (Plf's Moving Br. at 23); (2) denial of her request for a cubicle with a window (*Id*. at 25); (3) Maybury and Zervas "publicly humiliating her" (*Id*. at 23); and (4) Human Resources "threatening her with disciplinary action"/Figueroa's condescending behavior (*Id*.). The Court considers each of these issues next.

### i.   Denied Transfer

Plaintiff argues that the denied transfer was an adverse employment action because "being rejected for a job because of opposition to discrimination and retaliation would dissuade a reasonable worker from making or supporting a charge of discrimination." (Pl.'s Opp'n to State's Motion at 12–13.) State Defendants respond that (1) Plaintiff was not able to be transferred because of the ongoing reorganization at NJDEP and there is no evidence that Defendants denied her transfer; (2) there is no evidence that Plaintiff was more qualified than the persons who were transferred to BIR instead of her; (3) there were a number of criteria used to select who would be transferred; (4) neither Defendants Maybury or Zervas could have denied Plaintiff's transfer

because that ability is under the control of SRP Management; and (5) the Office of Labor Relations found there was no *prima facie* case shown of discrimination or any hostile working environment. (State's Moving Br. at 8.)  State Defendants also argue that Plaintiff did not lose pay, benefits, or status, and Plaintiff was ultimately transferred to another section.  (State's Moving Br. at 6.) Plaintiff makes several arguments about why the denied transfer to BIR was not a result of the reorganization at NJDEP.

Although Plaintiff seeks to characterize the denial of her transfer request as "being rejected for a job," being denied a transfer is a substantially different matter.  Generally, denial of a transfer is not an adverse employment action under Title VII or NJLAD.[10]  Decisions in this district and elsewhere in this Circuit have held that "a purely lateral transfer, or denial thereof, will generally not be regarded as an adverse employment action" unless it is "a position . . . that renders an employee worse off in terms of working conditions or economic opportunity." *Colson v. Cablevision MFR, Inc.*, Civ. No. 05-5639, 2008 WL 687257, at *6 (D.N.J. Mar. 11, 2008) (quoting *Flores v. Home Depot, Inc.*, Civ. No. 01–6908, 2003 WL 1793388, at *8 (E.D. Pa. Apr. 3, 2003)) (internal citations omitted); s*ee also Langley v. Merck & Co.,* 186 Fed. App'x 258, 260 (3d Cir. 2006) (affirming summary judgment in the analogous § 1981 context that "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions.").

Here, Plaintiff's desired transfer to the BIR was a lateral one.  Beyond bald assertions that she felt the need to change departments because she believed she was being mistreated (Plaintiff's Cert. ¶146), Plaintiff cites no evidence that positions in BIR were better in pay, benefits, or status.

---

[10] "[C]ourts employ the same framework and standard of review when analyzing claims under Title VII and NJLAD." *Prioli v. Cnty. of Ocean*, Civ. No. 18-256, 2021 WL 4473159, at *18 (D.N.J. Sept. 30, 2021) (citation omitted); *see also Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 282 n.13 (3d Cir. 2001) ("Under the NJLAD and Title VII, the analysis is essentially the same.").

11

In short, she has made no showing that the denial of the BIR transfer adversely affected the terms or conditions of her employment such that it constituted an adverse employment action.

> ii. *Denial of Plaintiff's Request for Window Cubicle*

Plaintiff also claims that the denial of a window cubicle was retaliatory. (Pl.'s Opp'n to State's Motion at 13.) State Defendants argue that the denial of Plaintiff's request of a window cubicle was not a retaliatory act because (1) Plaintiff was not able to be given a window cubicle due to NJDEP being in the process of a reorganization; (2) Plaintiff's health concerns cited in support of her request were addressed by the installation of appropriate natural lighting in her cubicle; (3) Defendant Zervas had nothing to do with the cubicle assignment; and (4) Plaintiff did ultimately receive a window cubicle. (State's Moving Br. at 8–9.)

Again, an adverse employment action is a significant change in employment status. *Durham Life Ins. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999). Denial of a window cubicle does not rise to this level and therefore does not qualify as an adverse employment action. *See, e.g., Ugorji v. New Jersey Env't Infrastructure Trust*, 529 F. App'x 145, 151 n.4 (3d Cir. 2013) (affirming that acts including assignment to windowless office did not suffice for *prima facie* showing of adverse employment action under Title VII or § 1983); *Shnaidman v. State, Dept. of Human Services, Div. of Mental Health Services*, No. A-4120-11T4, 2013 WL 1776098, at *9 (App. Div. Apr. 26, 2013) (noting that forced move from windowed office to smaller, windowless office does not rise to the level of an adverse employment action in the NJLAD context).

> iii. *Supervisor Incidents*

Plaintiff also cites three incidents with Zervas and Maybury, what she describes as: 1) Maybury's angry outburst to Plaintiff's previous supervisor in February 2011; (2) Zervas's "verbal

12

assault" in the hallway near the coffee area on September 7, 2011; and (3) Zervas's direction to not copy Defendant Maybury in emails on September 21, 2011.

These are also insufficient to qualify as adverse employment actions. "[T]o satisfy the NJLAD, the adverse actions cannot be minor slights like negative comments, but must be serious and tangible such that they constitute a change in the employee's terms conditions, or privileges of employment." *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 833 (D.N.J. 2020) (interior quotation marks omitted) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997) *abrogated on other grounds* by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

### iv. Collectively

Finally, Plaintiff also argues that she can make out a retaliation claim by citing a series of lesser events that nevertheless *collectively* constitute an adverse employment action. For this proposition, she relies on *Nardello v. Township of* Voorhees, 873 A.2d 577 (N.J. App. Div. 2005). That case, however, is readily distinguishable.

In *Nardello,* the plaintiff was a lieutenant in charge of the SWAT team for the Voorhees Township Police Department. 873 A.2d at 578–82. He alleged that he was forced to inform his superiors of cover-ups and alleged misconduct and because of this, he was: "denied permission to obtain firearms instructor training relative to his membership on the SWAT team; coerced to resign as leader and a member of the SWAT team; denied the ability to work on crime prevention programs; [ ] removed from the detective bureau, with his authority to supervise taken away ... [and] given demeaning jobs for his rank." *Id.* (noting that plaintiff alleged "thirty pages of incidents" that constituted adverse employment actions his employer took against him). *Id.* The court found that taken individually the retaliatory actions were relatively minor, but taken

collectively, the plaintiff made a *prima facie* case and a jury could conclude that they combined to "demonstrate a pattern of retaliatory conduct that is specifically prohibited." *Id.* Although the plaintiff had not been discharged, suspended or demoted, the court relied on dicta in a New Jersey Supreme Court opinion, Green v. Jersey City Bd. of Educ., 828 A.2d 883 (N.J. 2003), for the theory that "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct" may constitute an adverse employment action. *Id.* (recognizing that a state appellate court is bound by dicta issued by its supreme court). *Id.*

Here, Plaintiff does not allege anywhere near "thirty pages of incidents." The number and type of incidents that the New Jersey Superior Court found could collectively amount to an adverse employment action in *Nardello* are not remotely of the volume and type alleged in this case. Thus, *Nardello* is readily distinguishable and the Court finds that it does not support Plaintiff's position.

Insofar as the Court finds that Plaintiff has pointed to no evidence that she suffered an adverse employment action, it further finds that she has not satisfied her burden of presenting a prima facie case for retaliation under NJLAD. The Court will therefore grant the summary judgment sought by Defendants Maybury, Zervas, Lyons, and Figueroa as to these claims.

    2.    <u>Discrimination</u>

It is not clear from the operative Complaint or Plaintiff's papers to what extent she is actually pursuing a discrete claim for discrimination under NJLAD, and if so, what type of claim. The Second Amended Complaint alleges retaliation and discrimination within the same count and often within the same paragraph. (SAC ¶¶ 88–90.) Plaintiff's Brief in support of her Motion for Summary Judgment suggests that she is pursuing a claim for discrimination, but advances a legal standard that appears to be inconsistent with her claims.

> Under Title VII, an employer cannot "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). LAD prohibits the same. N.J. Stat. Ann. § 10:5-12(a). To sustain a *prima face* case of discrimination, a plaintiff must show: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances that support an inference of discriminatory intent. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010).

(Plf's Moving Brief at 15–16.)[11] To the extent that Plaintiff's Motion seeks to summary judgment on a discrimination claim requiring these elements, it will be denied because the Court has already concluded that she has cited insufficient evidence to establish that she suffered an adverse employment action.

For their part, Defendants move for summary judgment against Plaintiff's discrimination claim as though it were one based on hostile work environment. In an abundance of caution the Court considers this as well. To meet the *prima facie* elements for a claim of discrimination under NJLAD, a plaintiff must show: "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." *Victor v. State*, 203 N.J. 383, 409 (2010).[12]

---

[11] The second element reads like a failure to hire-type discrimination claim. It is possible that some of the confusion contributed by this language stems from the fact that it looks to have been lifted verbatim from an uncited and dissimilar case: *See Reynolds v. Jersey City Dep't of Pub. Works*, Civ. No. 18-1418, 2019 WL 117976, at *3 (D.N.J. Jan. 4, 2019). The Court assumes that this was an inadvertent oversight by counsel.

[12] State Defendants present the NJLAD discrimination claim as a hostile environment claim, which is a variety of the claim and has the same *prima facie* elements. Plaintiff, in her Motion, focuses more on the NJLAD retaliation claim and does not provide much analysis for this claim. The parties' confusion appears to stem largely from the way Plaintiff pleads her NJLAD claim simultaneously for both discrimination and retaliation within the same count and even within the same paragraphs. (See Sec. Am. Compl. ¶¶ 88–90).

15

State Defendants argue that there is no evidence that Plaintiff was mistreated because of her race, sex, religion, or national origin, nor is there evidence that any mistreatment was so severe as to alter her working conditions. (State Def's Moving Br. at 6.)

In Plaintiff's opposition to Defendants' motion for summary judgment, she implicitly rejects their proffered hostile work environment framework by responding instead within the framework for a retaliation claim. Accordingly, she does not brief the element of severity or pervasiveness. Rather, she reverts to citing to the same instances she believes were adverse employment actions. (Plf's Opposition to State's Motion at 12–13.)

The "sine qua non of a hostile work environment claim is a 'workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gavin v. Haworth*, Civ. No. 15-180, 2016 WL 7325474, at *9 (D.N.J. Dec. 16, 2016). (quoting *Fitzgerald v. Shore Memorial Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015)). For the same reasons the Court concluded that the instances Plaintiff cites did not suffice to make a showing of an adverse employment action, it likewise finds they were neither so severe nor pervasive as to go so far as altering her working conditions and establishing a hostile work environment.

Accordingly, the NJLAD discrimination claims against Defendants Figueroa, Maybury, Zervas, and Lyons fail.

### 3. Liability for Aiding and Abetting

Plaintiff, in her Motion, argues that Defendants Maybury, Zervas, Lyons, and Figueroa are also liable under the NJLAD for aiding and abetting discrimination and retaliating against Plaintiff and for their own retaliatory conduct. (Pl.'s Moving Br. at 24–25.) Insofar as the Court has already concluded that there has been no NJLAD violation, there can be no aiding and abetting.

16

### B. Claims under Title VII

Plaintiff asserts Title VII claims against Defendants State of New Jersey, NJDEP, and Maybury, Zervas, Lyons, and Figueroa in their official capacities. (*See* SAC ¶ 96.)

Title VII of the Civil Rights Act of 1964 prohibits discriminatory practices by employers based on an employee's race and sex. 42 U.S.C. § 2000e–2, *et seq*. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). As preliminary matter, Plaintiff's Title VII claims cannot proceed as to individual Defendants in their individual capacities. The Third Circuit, like a clear majority of courts, has held that there is no individual liability under Title VII. *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1077–78 (3d Cir.1996).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove: (1) that she was engaged in a protected activity known to the employer; (2) that she was thereafter subjected to an adverse employment decision by the employer; and (3) that there was a causal link between the protected activity and the adverse employment decision. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir. 1997). Both Defendant Figueroa and State Defendants reiterate their previously stated arguments for the NJLAD retaliation claim. For the same reasons articulated for the parallel NJLAD retaliation claim, the Court finds that Plaintiff has not made her prima facie showing under Title VII. Therefore, the Court will grant Defendants' motions for summary judgment as to these claims.

The prima facie elements of a Title VII discrimination claim are: (1) the plaintiff is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances

17

that could give rise to an inference of intentional discrimination. *Goode v. New Jersey Dep't of Corr.*, Civ. No. 06-960, 2015 WL 1924409, at *8 (D.N.J. Apr. 28, 2015) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). For the same reasons articulated for the parallel NJLAD discrimination claim, the Court finds that Plaintiff has not made her prima facie showing under Title VII. Therefore, the Court will grant Defendants' motions for summary judgment as to these claims.

### C. Claims under New Jersey Civil Rights Act (NJCRA)

Plaintiff asserts NJCRA claims against Defendants State of New Jersey, NJDEP, and Maybury, Zervas, Lyons, and Figueroa in their official and individual capacities. (*See* SAC ¶ 104.)

The NJCRA is modeled after its federal counterpart, 42 U.S.C. § 1983. *Tumpson v. Farina*, 218 N.J. 450, 474 (2014). Section 1983 permits private civil actions for damages against any person who, acting under the color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or federal law. *See* 42 U.S.C. § 1983. A plaintiff must establish (1) a deprivation of a federally protected right and (2) that this deprivation was committed by a person acting under the color of state law. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, the NJCRA claims cannot be made against Defendants in their official capacities, only their individual capacities.

State Defendants and Defendant Figueroa argue that Plaintiff cannot state a constitutional violation. (State's Moving Br. at 20; Figueroa's Moving Br. at 9–10). Plaintiff seems to use the Third Circuit's August 28, 2020 Opinion to argue for a constitutional right. (Pl.'s Opp'n to State's Br. at 11–12.) The Opinion provides that Plaintiff has suffered a constitutional deprivation as a

result of the State of New Jersey's strict confidentiality directive and is entitled to an award of reasonable attorney's fees and costs. (*Id.*) The Court does not interpret the Opinion to suggest a constitutional right is protected by § 1983 for the instant case, and agrees with State Defendants' argument that the Opinion has no impact on the Motions and did not determine the claims of discrimination and retaliation. (State's Opp'n to Pl.'s Motion at 5–6.) Therefore, the NJCRA claims against all Defendants fail.

### IV.   **CONCLUSION**

For the reasons stated above, the Court will GRANT State Defendants' Motion for Summary Judgment and GRANT Defendant Figueroa's Motion for Summary Judgment, and it will DENY Plaintiff's Motion for Summary Judgment. In light of its decisions as to the dispositive motions, the Court will DENY AS MOOT Plaintiff's Appeal from Magistrate Judge Decision.

Date: **October 31, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
